IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

DANIEL WATSON, a minor, by his next
friends, JIM WATSON and SANDRA WATSON,

      Plaintiffs,

    vs.                                                                                  No. CIV 98-0551 JC/LFG

ROBERT D. BECKEL, Superintendent,
NEW MEXICO MILITARY INSTITUTE, et al.,

      Defendants.

## **MEMORANDUM OPINION AND ORDER**

THIS MATTER came on for consideration of Plaintiff's Motion to Amend Complaint, filed July 15, 1999 *(Doc. 38)*, Defendants' Motion for Summary Judgment, filed July 15, 1999 *(Doc. 41)*, Defendants' Supplemental Motion for Summary Judgment, filed July 15, 1999 *(Doc. 45)*, and Defendants' Motion in Limine, filed July 15, 1999 *(Doc. 49)*. The Court has reviewed the motions, the memoranda submitted by the parties, and the relevant authorities. The Court finds that Defendants' Motion for Summary Judgment *(Doc. 41)* is well taken and will be granted. The Court further finds that Plaintiff's Motion to Amend Complaint *(Doc. 38)* is not well taken and will be denied. The Court also finds that Defendants' Supplemental Motion for Summary Judgment *(Doc. 45)* and Defendants' Motion in Limine *(Doc. 49)* are moot and therefore will be denied as moot.

I.     **Background**

In January of 1998, Plaintiff Daniel Watson joined the ninth-grade class at New Mexico Military Institute ("NMMI"). At some point in early March of 1998, Mr. Watson came under investigation for an alleged assault on his roommate, Cadet James DePrieto. Majors Antonio Pino and Christopher Cortez conducted the investigation into the alleged assault. Following the investigation, Plaintiff was notified that a Major Discipline Board was being convened to "hear and review evidence and recommend to the Commandant of Cadets possible action for [the] alleged violation of school rules." Complaint at 2.

Plaintiff appeared before the Major Discipline Board ("the Board") on March 18, 1998. The Board was comprised of various members of the NMMI faculty and students. The Board recommended that Plaintiff be dismissed from NMMI. The Commandant of Cadets, Seth Orell, accepted the Board's recommendation. Plaintiff subsequently appealed the Board's dismissal to Superintendent Robert Beckel. Superintendent Beckel upheld the dismissal, and Plaintiff was dismissed on March 25, 1998 for Conduct Unbecoming a Cadet.

Plaintiff now brings suit under 42 U.S.C. § 1983 for violations of his procedural and substantive due process rights. Plaintiff claims the notification he was given prior to the Board was inadequate because it did not "list any alleged school rule violations or in any way inform the Plaintiff of allegations against him." Complaint at 2. Plaintiff also argues his rights were violated because he "was not allowed any representation and his parents were not allowed to attend." Complaint at 3.

**II.     Analysis**

I will initially address Defendants' Motion for Summary Judgment because the issues raised in that motion cut to the core of this case and obviate the need for me to address qualified immunity or the motion in limine. In Defendants' Motion for Summary Judgment, Defendants argue (1) that NMMI afforded Mr. Watson adequate procedural due process prior to his dismissal; and (2) that Mr. Watson's admission to the underlying conduct precludes a due process challenge.

As both parties have highlighted, the Supreme Court has drawn a few bright line rules for procedural due process claims in school discipline cases. *See Goss v. Lopez*, 419 U.S. 565 (1975). Under *Goss*, "[s]tudents facing temporary suspension have interests qualifying for protection of the Due Process Clause" and are entitled to "an explanation of the evidence the authorities have and an opportunity to present [their] side of the story." *Id.* at 581. However, "[l]onger suspensions or expulsions . . . may require more formal procedures." *Id.* at 584.

In this case, we are dealing with Plaintiff's permanent dismissal from NMMI. Thus, the procedural protections must be greater than those recognized in *Goss*. Although the extent of the protections in expulsion cases is not clearly defined, it is fairly clear that a party facing dismissal or expulsion must be given adequate notice, a definite charge, and a hearing with an opportunity to present one's own side. *See Woodis v. Westark Community College*, 160 F.3d 435, 440 (8th Cir. 1998); *Nash v. Auburn Univ.*, 812 F.2d 655, 662-63 (11th Cir. 1987); *Bivens v. Albuquerque Public Schs.*, 899 F. Supp. 556, 563 (D.N.M. 1995). *See also Trujillo v. Taos Municipal Schs.*, No. CIV 94-1350, 1995 WL 868603 *8-*9 (D.N.M. Aug. 10, 1995).

In this case, I find that Plaintiff received adequate due process. Plaintiff was notified in writing that a Major Discipline Board was being convened on March 18, 1998. *See* Defs.' Mot. for

Summ. J. Ex. 2. Plaintiff was also told orally that he was being charged with an assault on another cadet.[1] *See* Pl.'s Resp. at 6. Additionally, and most importantly, Plaintiff, and his parents, had constructive knowledge of what the Board was being convened to determine. *See* Defs.' Mot. Ex. 28 ("When we reached Peno, he was arrogant, accused Dan of 'beating' up his roommate, and said that Dan was a racist.") ("[The Commandant] informed us that the Board would be very fair . . . and that the boys involved would probably be punished in-house unless the incident was . . . hazing.") ("And so we were led to believe by Commandant Orell that: "If this was a consensual situation with De Prito . . .""); Defs.' Mot. Ex D at 104-5 ("I remember I found out") ("Now [my parents] did come, seems like, awhile after."). Plaintiff's written and oral notice came following the in-depth investigation of Troop Leader Cortez. *See* Defs.' Mot. Ex. 19 ("I uncovered seven new allegations from statements and interviews of the individuals involved").

In addition to the notice Plaintiff received, Plaintiff was afforded a hearing--a Major Disciplinary Board--that resembled a full-blown judicial trial. *See* Pl.'s Resp. at 5-7. At the Board, Plaintiff had the opportunity to be represented by another cadet or faculty member; to present his case; and to cross examine witnesses. Plaintiff was also afforded the opportunity to meet with the Commandant following the Board and to make an appeal to the Superintendent.

Although I have found that Plaintiff received adequate due process, I find that even if Plaintiff had been denied some process he would have suffered no prejudice as a result. *See Trujillo*, 1995 WL 868603 at *9 ("In light of Student's admission of the offense, no due process infringement could be found even if the charges against him were not included on the notice of hearing"). Plaintiff

---

[1] Plaintiff also fails to deny that he was told that Cadet DePrieto (his roommate) was the alleged assaultee. *See id.* at 6. *See also* Defs.' Mot. Ex. B, at 96, ln. 12.

admitted that he engaged in the assault on his roommate and freely admitted on appeal that he was a racist. *See* Pls.' Resp. at 2 ("Watson has always admitted that he [was] involved in rough housing and wrestling."); Defs.' Reply Ex. A at 193-94. *See also* Defs.' Brief Ex. 3 ("Watson testified on his own behalf. He testified he had been a leader of the events. He testified DePrieto's description of the events were accurate. He testified he had hit DePrieto on the body and face, and he had hit and kicked DePrieto while DePrieto was on the ground. Watson steadfastly testified he was a racist."). Consequently, summary judgment will be granted for Defendants on Plaintiff's procedural due process claim.

The Court further finds that Plaintiff's substantive due process claim is without merit. *See Trujillo*, 1995 WL 868603, *10 ("Expelling a student for carrying a gun to school is certainly rationally related to the vital state interest in providing a safe environment conducive to learning, protecting students and staff, and maintaining discipline in public schools."). Additionally, any attempt by Plaintiff to amend the Complaint with a liberty or equal protection claim would be futile.[2] As I have previously indicated, Plaintiff cannot "prove that the entire process of arriving at the decision to dismiss the [Plaintiff] was totally lacking in any due process." Pls.' Mem. Supp. Mot. Amend at 2. *See also Trujillo*, 1995 WL 868603, *10 ("Plaintiffs' equal protection claim fails for the same reasons as do any substantive due process claims. The right to an education is not a fundamental right, and Plaintiffs have not alleged any suspect classification.").

---

[2] Notifying the Corps of Cadets of Mr. Watson's dismissal was rationally related to maintaining good order and discipline at NMMI.

Wherefore,

**IT IS ORDERED** that Plaintiff's Motion to Amend Complaint, filed July 15, 1999 *(Doc. 38)*, is **denied**.

**IT IS FURTHER ORDERED** that Defendants' Motion for Summary Judgment, filed July 15, 1999 *(Doc. 41)*, is **granted**.

**IT IS FURTHER ORDERED** that Defendants' Supplemental Motion for Summary Judgment, filed July 15, 1999 *(Doc. 45)*, and Defendants' Motion in Limine, filed July 15, 1999 *(Doc. 49)*, are **denied as moot**.

DATED this 24th day of August, 1999.

_____
**CHIEF UNITED STATES DISTRICT JUDGE**

| | |
|---|---|
| Counsel for Plaintiff: | Warren F. Frost |
| | Warren F. Frost, P.C. |
| | Tucumcari, New Mexico |
| | |
| Counsel for Defendants: | Richard E. Olson |
| | Rebecca Nichols Johnson |
| | Hinkle, Cox, Eaton, Coffield & Hensley, L.L.P. |
| | Roswell, New Mexico |